IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 11-564-4 |
| v. | : | |
| | : | CIVIL ACTION |
| JAMAL STEWART | : | NO. 15-3892 |

MEMORANDUM

Bartle, J.                                        September 21, 2016

Before the court is the motion of Jamal Stewart ("Stewart") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. # 665).[1]

On October 6, 2011, Stewart was named in a superseding indictment along with fourteen other defendants.  He was charged with:  one count of conspiracy to distribute at least 280 grams of crack cocaine and at least 500 grams of cocaine heroin, marijuana, oxycodone, and alprazolam, in violation of 21 U.S.C. § 846 (Count One); three counts of distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Six, Eight, and Fourteen); three counts of distribution of a controlled substance within 1,000 feet of a school in violation of 21 U.S.C. § 860(a) (Counts Seven, Nine, and Fifteen); and two counts of possession of a controlled

_____

1.  Stewart has actually filed two motions.  The first was filed on July 13, 2015 but was not submitted on the standard § 2255 form as required by this court.  Once he was made aware of the deficiency, Stewart filed a corrected motion, this time on the required form.

substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Twenty-Four and Fifty-One).

Stewart proceeded to trial, and on May 24, 2012 he was convicted by a jury on all counts against him. On February 26, 2013, this court imposed a sentence of 120 months' imprisonment followed by a term of supervised release of six years. The Court of Appeals for the Third Circuit subsequently affirmed Stewart's conviction and sentence. On April 21, 2015 this court reduced Stewart's term of imprisonment to 99 months pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 of the Sentencing Guidelines. Stewart thereafter timely filed the instant § 2255 motion.

Stewart now contends that he is entitled to relief because his trial counsel Trevan Borum ("Borum") was ineffective in three respects. First, he maintains that Borum failed to inform him "that there was a Plea Agreement on the table," instead telling him only about a "cooperation Plea Agreement." According to Stewart, had he known of the offer that Borum allegedly withheld, he would not have proceeded to trial. Second, Stewart avers that Borum provided deficient representation in that he did not provide hard copies of all discovery materials for Stewart to review at his leisure while he was being held in the Federal Detention Center ("FDC") in Philadelphia prior to trial. Finally, Stewart asserts that

-2-

Borum provided ineffective assistance by neglecting to file a Petition for a Writ of Certiorari to the United States Supreme Court and by failing to inform Stewart of the deadline for filing such a petition.[2]  The court held an evidentiary hearing at which both Stewart and Borum testified.

Under Strickland v. Washington, to establish ineffective assistance, Stewart must first demonstrate that his counsel's performance fell below "an objective standard of reasonableness."  466 U.S. 668, 687-88 (1984).  To do so, Stewart must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment."  Id. at 687.  Stewart must then prove that he was prejudiced, that is, that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  In assessing Stewart's ineffective-assistance claims we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 690.

---

2.  In his motion, Stewart also asserted a fourth basis for relief, arguing that Borum did not adequately inform him prior to trial of the sentencing consequences he could face if convicted.  Stewart has since withdrawn this argument.

At the evidentiary hearing, Stewart testified that after he was indicted but before the start of trial, he heard from his mother and from others that certain coconspirators charged in the superseding indictment had been offered plea agreements by the Government.  According to Stewart, he learned that codefendants Harold Jackson, Elizabeth Cadogan, Philis McAllister, and Frank Wade had all been offered deals pursuant to which they would plead guilty to offenses involving fewer than 280 grams of crack cocaine.  Stewart believed that these deals did not require his codefendants to cooperate with the Government.  He testified that he repeatedly asked Borum to request a similar deal from the Government on his behalf and that Borum consistently promised to make such a request. Stewart stated that if the Government had extended such a plea offer, he would have accepted it.

The evidence establishes, however, that the Government never offered Stewart a "noncooperation plea."  Instead, it agreed to meet with Stewart and Borum to discuss the possibility of a guilty plea.  Stewart insists that this meeting lasted for 20 minutes and that he cut it short when he learned that the Government was not interested in anything but a cooperation-based plea agreement.

The testimony of Borum paints a different picture. According to Borum, Stewart was adamant from the time he was

indicted that he wished to proceed to trial and that he did not want to plead guilty. Borum maintained that Stewart never asked him to inquire of the Government about the possibility of a plea bargain. Indeed, Borum testified that the Government contacted him about the possibility of a proffer and that Stewart responded by stating that he did not wish to cooperate. Borum recalled that he, Stewart, and members of the prosecution team had attended a "reverse proffer" at which the Government presented its evidence against Stewart. Borum stated that during the meeting the Government reviewed with Stewart the benefits of pleading guilty and cooperating with the prosecution, including the possibility that the prosecution might thereafter file a motion on Stewart's behalf pursuant to 18 U.S.C. § 3553(e) or § 5K1.1 of the Sentencing Guidelines. Borum represented, and his billing records confirm, that this meeting lasted approximately three hours. After the reverse proffer, according to Borum, Stewart continued to insist on proceeding to trial.

To the extent that the testimony given by Stewart at the evidentiary hearing contrasts with the testimony of Borum, we find Borum credible and Stewart not credible. We accept the testimony of Borum that Stewart was adamant that he wished to go to trial rather than plead guilty and that he never informed Borum of pleas entered into by his codefendants and never

-5-

instructed Borum to request a similar offer from the Government. In sum, Borum's performance in this regard did not fall below "an objective standard of reasonableness."  See Strickland, 466 U.S. at 687-88.[3]

As noted above, Stewart also urges that Borum was ineffective in that he failed to provide Stewart with hard copies of all discovery turned over to him by the Government. He states in his motion that Borum "never relinquished my Discovery to me to view the evidence against me and for assessment to either go to trial or to take a plea."

At the evidentiary hearing, Borum conceded that he did not leave copies of the discovery with Stewart at the FDC. Instead, Borum testified, he spent approximately 22 hours reviewing with Stewart the discovery provided by the Government, which he characterized as "voluminous."  At least some of this

_____

3. Stewart relies on the Supreme Court's decision in Missouri v. Frye, 132 S. Ct. 1399 (2012), for the proposition that the right of a defendant to effective counsel applies in the plea-bargaining context.  Frye, in which defense counsel had failed to communicate a formal plea offer to his client, is totally distinguishable from this case.  See id. at 1408.  We likewise reject Stewart's reliance on a decision of the Eleventh Circuit for the proposition that "[c]ounsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution."  See Cook v. United States, 613 F. App'x 860, 863-64 (11th Cir. 2015) (citing Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991)).  There is no evidence that Borum failed to "consult with his client on important decisions" or to "keep him informed of important developments" with respect to plea bargaining.  See id.

review was conducted on computers available at the FDC.   Among other things, Borum brought Stewart CDs provided by the government containing videos that purported to show Stewart engaging in drug transactions.   The two of them viewed this evidence together on FDC computers.   Borum stated that he did not turn over any Jencks[4] material to his client because he was prohibited from doing so.

Again, the testimony of Stewart contrasts with that of Borum.   Stewart insisted during the evidentiary hearing that Borum did not review all of the discovery with him.   He stated that Borum told him at the time that reviewing the videos was not necessary as Borum intended to proceed to trial on the theory that Stewart had been involved in drug sales but had not participated in a conspiracy.   If Stewart is to be believed, Borum spent only a few minutes reviewing discovery with him and simply played for him an audio recording of a telephone call during which Stewart warned another individual about the police. Stewart testified that the 22 hours of FDC visits reflected in Borum's bookkeeping records were not spent reviewing discovery but that Borum instead spent this time trying to persuade Stewart to cooperate with the Government.

---

4.   See 18 U.S.C. § 3500(b); Jencks v. United States, 353 U.S. 657 (1957);.

Once again, we find Borum's testimony credible.  To the extent that Stewart's testimony conflicts with that of Borum, we find Stewart not believable.  Borum spent 22 hours reviewing the available discovery with his client, and he was diligent and thorough in doing so.  Borum was under no professional obligation to leave hard copies of the discovery with Stewart at the FDC so that Stewart could review this material at his leisure.  Even if we were to conclude that Borum did err by failing to leave the discovery with Stewart, this was not an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed [a] defendant by the Sixth Amendment." See Strickland, 466 U.S. at 687.  To the contrary, Borum's "conduct f[ell] within the wide range of reasonable professional assistance."  See id. 690.

Moreover, Stewart was not prejudiced by Borum's decision.  See id. at 694.  We find that Stewart remained adamant that he wished to proceed to trial, even after having been presented with the strength of the Government's evidence against him during a reverse proffer.  It is highly unlikely that Stewart would have been swayed had he been able to retain hard copies of the discovery.  Consequently, there is no "reasonable probability that but for" any error of Borum in this regard, the outcome would have differed.  See id.

-8-

Finally, Stewart contends that Borum provided deficient representation by failing to file a Petition for a Writ of Certiorari and by neglecting to inform him of his right to do so.  Stewart testified that he did not learn of the possibility of petitioning for certiorari until he received an unsolicited letter from a Florida law firm offering to file a petition on his behalf.  By this time, Stewart explained, the deadline for filing a petition had passed.  Borum did not dispute Stewart's version of these events at the § 2255 hearing.[5]

As the Government correctly observes, criminal defendants enjoy no constitutional right to "counsel to pursue . . . applications for review in" the Supreme Court.  Wainright v. Torna, 455 U.S. 586, 587 (1982).  Thus, a defendant cannot be "deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."  Id. at 587-88; United States v. Dill, 555 F. Supp. 2d 514, 519 (E.D. Pa. 2008).  We note further that even if Borum did err in failing timely to file a petition or to notify Stewart of the applicable deadline, there is no "reasonable probability" that but for this error the outcome would have been different.  See Strickland,

---

5.  At the evidentiary hearing, Stewart also testified that Borum never informed him that the Court of Appeals had rejected his appeal.  Borum, whose testimony occurred before that of Stewart, was not asked about this contention.  In any event, the claim that Borum failed to inform Stewart of the outcome of his appeal does not serve as one of the grounds for his § 2255 petition.

466 U.S. at 694.  We find it highly unlikely that the Supreme Court would have granted certiorari to review the highly fact-specific decision of our Court of Appeals in this case.[6]

As the Strickland Court observed, "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence."  466 U.S. at 689. Stewart long remained adamant that he wished to take his chances at trial rather than pleading guilty.  Now, with the benefit of hindsight, he is second-guessing his decision.  However, he has not produced credible evidence to have his sentence vacated, set aside, or corrected pursuant to § 2255.  His motion will therefore be denied.  No certificate of appealability will issue.

---

6.  Stewart acknowledges that criminal defendants enjoy no right to counsel in pursuing petitions for certiorari.  However, he cites the decision of this court in United States v. Lin, No. 90-294, 1996 WL 460066 (E.D. Pa. Aug. 9, 1996) for the proposition that "a right for such a petition may arise if Mr. Stewart requested in writing for his counsel to seek certiorari, or if counsel had told Mr. Stewart that such a petition was possible."  Stewart's reliance on Lin is misplaced, since he does not allege that he made a written request to Borum or that Borum instructed him that a petition for certiorari was a possibility.  See id.  Furthermore, Stewart neglects to mention the Lin court's conclusion that "the fact that counsel did not file a petition for certiorari did not deprive [Lin} of effective counsel in violation of his constitutional rights" because "[r]eview by the Supreme Court is discretionary . . . and . . . defendants have no right to counsel to pursue discretionary review."  Id. at *9 n.11 (citing Wainwright v. Torna, 455 U.S. 586 (1982)).

-10-